### ZIMMERMAN v. GIRARDI.

(Circuit Court of Appeals, Second Circuit. June 17, 1896.)

CONTRACTS—QUESTION FOR JURY.

Plaintiff sued defendant for the value of certain goods alleged to have been sold to him, but which defendant claimed were placed with him by the plaintiff on consignment. The contract originally made between the parties was contained in certain letters and other documents, but there was oral evidence of a conversation between the parties which, if the plaintiff's version of it were believed, tended to establish a new agreement between the parties, after the original contract, by which the defend-

ant on sufficient consideration undertook absolutely to pay for the goods. *Held* that, though, if the contract were wholly contained in the writings, its interpretation would be for the court, and though some of the correspondence tended strongly to corroborate defendant's version of the conversation, the evidence in regard to the latter required the submission of the issue to the jury.

In Error to the Circuit Court of the United States for the Southern District of New York.

Stern & Rushmore, for plaintiff in error.

R. Burnham Moffat, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. No exceptions were taken for the defendant, the present plaintiff in error, to any rulings of the trial judge other than his refusal to take the case from the consideration of the jury and decide, as a matter of law, that upon the evidence which had been introduced the plaintiff was not entitled to recover because it did not appear that the defendant had agreed to purchase the merchandise sent to him by the plaintiff. Unless this ruling was erroneous, the assignments of error are without foundation.

The merchandise consisted of seven shipments of straw braids sent by the plaintiff from Marostica, Italy, to the defendant at New York City at different times between June, 1889, and November, 1890, the last but one having been sent in or prior to January, 1890. The contract originally made between the parties respecting the disposition of the goods was embodied in their correspondence, consisting of letters, invoices, and statements of account transmitted during the period of the shipments. It is insisted for the plaintiff in error that, unless this correspondence imports an agreement that the goods were sent upon consignment, to be sold by the defendant for the account of the plaintiff, it shows that the parties never reached an agreement, because there was no assent by the defendant to the terms of sale proposed by the plaintiff; and upon this theory he contends that a verdict should have been directed in his favor. If the only evidence of a purchase by the defendant had been that which was contained in the correspondence, the contention would be sound. There were no words or phrases in the letters having a significance depending upon extraneous evidence, and, this being so, the case would have been controlled by the rule that the interpretation of agreements to be deduced from correspondence of the parties devolves upon the court as matter of law. But, besides the letters, oral evidence was introduced relating to an interview which took place between the parties at Brugg, Switzerland, in August, 1891, tending to show that a further agreement was made by the parties. The interview was carried on through the medium of an interpreter, and the testimony, possibly because it was taken upon commission, does not give the conversation in much detail, or disclose a specific promise by the defendant to purchase or pay for the goods. But, if the version given by the plaintiff and his witness Padovan is true, what took place raised at least an implication of acquiescence and

assent by the defendant equivalent to such a promise. The plaintiff himself testified as follows:

"John Zimmerman said that the merchandise had not been sold because the season was unpropitious, and because other articles were in demand and were sold. I said I did not accept such reasons, because they did not concern me in any way, and I ventured the suggestion that it was because of the fact of small sales he had from time to time pretended that my merchandise was on consignment, and that such claim was in manifest contradiction to all preceding correspondence. John Zimmerman assured me many times that in the following autumn the conditions of the New York market would change, and predicted the certain sale of the merchandise. On the basis of this express assurance, I said I would grant him, by way of compromise, a respite until the following autumn, or until December at the latest, for the full payment of the merchandise without any deduction, whether for discounts or for charges. But I did not say I would grant him consignment. On the contrary, it was clearly stated to him that, as soon as he arrived in New York, which was to be within a few weeks, he should open and examine the merchandise, which he said was on the docks, and should remit at the same time a payment of 20,000 francs on account. I insisted upon this agreement to such an extent that Fritz Zimmerman said that, as we understood each other, there was no occasion to keep bringing the subject up again; otherwise, John Zimmerman would be offended. After this he gave me an order for 7,450 pieces 'Maglina nella biancata,' to be paid for as soon as the merchandise should arrive at Florence and be examined by Fritz Zimmerman."

The witness Padovan testified that, after the parties had stated their different contentions—

"Girardi thereupon stated that by way of compromise he would grant not a consignment, but a respite for payment of the balance of the merchandise at the invoice prices, without deductions or allowances, until the autumn or December following; insisting, and to this Zimmerman said he agreed, that as soon as the latter should arrive in New York, where he expected to be in a short time, 20,000 francs should be remitted on account, immediately upon examination of the goods, which Zimmerman said were lying on the docks. Girardi kept insisting upon these conditions, so that Fritz Zimmerman finally said it was best not to speak again on the subject, so as not to sour John Zimmerman. It seemed to Girardi to have been agreed upon, and he accepted the suggestion. After the conversation Mr. John Zimmerman gave Girardi a new order for braids."

Notwithstanding the testimony of the defendant to the effect that, at that interview, he refused to change his position in the matter, and that its final outcome was that the plaintiff agreed to have the goods stand on consignment,—testimony which is materially corroborated by letters from the plaintiff written subsequently,—the evidence in respect to this interview presented an issue of fact which it was the exclusive province of the jury to decide. It authorized them to find that, whatever might have been the previous contract between the parties, a new agreement was reached by which the plaintiff consented to extend the time of payment of the demand, which he then claimed to be due, and the defendant promised to accept the goods upon the basis of a purchase to be paid for in the following December. The trial judge could not have directed a verdict for the defendant without invading the province of the jury.

We find no error in the record, and the judgment should therefore be affirmed.